IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

PROFUNDS DISTRIBUTORS, INC.,　　　　　　　)
　　　　　　　　　　　　　　　　　　　　　)
　　　　　　　　Plaintiff,　　　　　　　　　)　　　11-CV 7244 (CM)
　　　　　　　　　　　　　　　　　　　　　)
　　　- against -　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　　)
ANDREW KEITH SLAYTON AND JAMES J.　　　)
FARRELL, III　　　　　　　　　　　　　　　)　　　ECF CASE
　　　　　　　　　　　　　　　　　　　　　)
　　　　　　　　Defendants.　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　　)

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF PROFUNDS DISTRIBUTORS' MOTION FOR <u>A PRELIMINARY INJUNCTION</u>

David U. Gourevitch, Esq.
Law Office of David U. Gourevitch, P.C.
950 Third Avenue, 15th Floor
New York, NY 10022
(212) 355-1300
*Attorneys for Plaintiff*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................iii

STATEMENTS OF FACTS............................................................................... 2

Argument     THE ARBITRATION SHOULD BE PRELIMINARILY
ENJOINED ...............................…..................................................5

    A.    The Plaintiffs Will Suffer Irreparable Harm if Forced
To Arbitrate a Dispute It Has Not Agreed to Arbitrate,
And Defendants Can Show No Countervailing
Hardship….....................................................................5

    B.    The Plaintiffs Have a Strong Likelihood of Success
On the Merits ……………………………......……………6

        1.    Arbitration is Solely a Matter of Contract and Parties
May Not Be Forced to Arbitrate Disputes They Did
Not Agree to Arbitrate………………………………….6

        2.    Whether An Agreement to Arbitrate Exists is For the
Court to Decide……………………………………….....6

        3.    No Agreements Exist Between the Parties to
Arbitrate Their Dispute……………………………….7

        4.    The Defendants Claims Are Not Arbitrable
Under FINRA Rules……………………………..…..7

            a.    The Defendants Are Not the Plaintiffs'
Customers………………………………...…..8

            b.    The Claims Did Not Arise "In Connection
With" Defendant's Business With PDI…………..12

            c.    Every Court to Consider the Issue Has Held
That An Investor Cannot Compel A Mutual
Fund Distributor to Arbitrate ………..……......12

        5.    Requiring Plaintiffs to Arbitrate Would Violate
The Plaintiffs' "Reasonable Expectations"……………...14

C.      The Balance of Hardship Weighs In the Plaintiffs'Favors..........14

CONCLUSION...................................................................................15

# TABLE OF AUTHORITIES

## CASES

*Aetna Ins. Co. v. Kennedy*, 301 U.S. 389, 393 (1936)............................................14

*AT&T Tech. Inc. v. Communications Works of America*, 475 U.S. 643, 648 (1986).......6

*AXA Distributors v. Bullard,* 2008 U.S. Dist. Lexis 103837 (M.D. Ala. 2008) .........2,13

*Bensadoun v. Jobe Riat,* 316 F.3d 171, 175 (2d Cir. 2003) ...........................7,9,14

*BMA Fin. Servs. v. Guin,* 164 F. Supp.2d 813, 819 (W.D. La. 2001).......................10

*Brookstreet Sec. Corp. v. Bristol Air, Inc.*, 2002 U.S. Dist. Lexis 16784
(N.D. Ca. 2002) ...........................................................................10,11

*Citigroup Global Markets, Inc. v. VCG Special Opportunities Masters Fund Ltd.,*
598 F.3d 30, 35 (2d Cir. 2010)..........................................................5,14

*Fin. Network Inv. v. Theilbar*, 2004 U.S. Dist. Lexis 14889 (N.D. Ill. 2003).............10

*First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938 (1955)..............................6

*Fleet Boston Robertson Stephens, Inc. v. Innovex,* Inc. 264 F.3d 770, 772
(8th Cir. 2001)....................................................................... ...8,10,11

*Herbert J. Sims Co., Inc. v. Roven*, 548 F.Supp.3d 759, 765 (N.D. Cal 2008)...........10

*Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) ...........................6

*Investors Capital Corp. v. Brown*, 145 F.Supp.2d 1302, 1306 (M.D. Fl. 2001)...........10

*John Hancock Life Ins. v. Wilson*, 254 F.3d 48, 53 (2d Cir. 2001)...........................8

*Malak v. Bear Stearns & Co., Inc.*, 2004 U.S. Dist. Lexis. 1422
(S.D.N.Y. 2004)...........................................................................9,10,13

*Maryland Cas. Co. v. Realty Advisory Bd. On Labor Relations*, 107 F.3d 979, 985
(2d Cir. 1997)..................................................................................5

*Merrill Lynch Inv. Managers v. Optibase, Ltd.,* 337 F.3d 125, 129
(2d Cir. 2003)..................................................................................5

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985)..................................................................................................6

*Oppenheimer Funds Dist. V. Colard,* Case No. 09CV5653 (Denver Co. Dist. Co. 2009).............................................................................................2,13

*ProShares Trust et al. v. Schnall,* 695 F. Supp.2d 76 (S.D.N.Y. 2010) ...............2,5,13

*Sands Bros. & Co., Ltd. v. Ettinger*, 2004 U.S. Dist. Lexis 4243 (S.D.N.Y. 2004).................................................................................................8,12

*SIPC v. Morgan Kennedy*, 533 F.2d 1314, 1318 (2d Cir. 1976)..............................8

*UBS Financial Serv. v. West Virginia Hospitals-East Inc.*, 2011 Lexis 19420 (2d Cir. September 22, 2011) ..............................................................5,9,10

*Volt Info. Sciences, Inc. v. Stanford Univ.*, 489 U.S. 468, 469 (1989).....................6

*Wheat, First Sec., Inc. v. Greene*, 993 F.2d 814, 820 (11th Cir. 1993).....................13

## STATUTES

*Federal Arbitration Act ("FAA"), 9 U.S.C., §§* ..............................................6

## SEC RULES

*Rule 240.15c3-1(c)(6)*.......................................................................11

*Rule 240.17a5(c)(4)* ........................................................................11

## FINRA

*Rule 12200*....................................................................................1,7

*Rule 2261(c)* ...............................................................................10,11

*Rule 2520(a)(3)* ..............................................................................11

*Rule 10120-(8)* ...............................................................................10

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| PROFUNDS DISTRIBUTORS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | 11-CV 7244 |
| | ) | |
| - against - | ) | |
| | ) | |
| ANDREW KEITH SLAYTON AND JAMES J. | ) | |
| FARRELL, III | ) | ECF CASE |
| | ) | |
| Defendants. | ) | |
| | ) | |

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF PROFUNDS DISTRIBUTORS' MOTION FOR A PRELIMARY INJUNCTION

Plaintiff ProFunds Distributors, Inc. ("Plaintiff" or "PDI") respectfully submit

this memorandum of law in support of its motion for a preliminary injunction pursuant to

Rule 65, Federal Rules of Civil Procedure, enjoining an arbitration initiated by

Defendants Andrew Keith Slayton and James J. Farrell, III (collectively, "the

Defendants"), entitled *Andrew Keith Slayton and James J. Farrell, III v. ProFunds*

*Distributors, Inc.*, (FINRA Case 11-02743) ("the FINRA arbitration") before the

Financial Industry Regulatory Authority ("FINRA").

## INTRODUCTION

Under Rule 12200 of the FINRA Code of Arbitration, member firms, including

PDI, must arbitrate a dispute where (i) it arises "between a customer and a member or

associated person of a member"; and (ii) the dispute arises "in connection with the

business activities" of the member.  The Defendants' FINRA arbitration satisfies neither prong.  The Defendants were never "customers" of PDI; their claims do not arise "in connection with" PDI's business activities.  There also is no arbitration agreement between the Plaintiff and Defendants.

Last year, this Court enjoined a strikingly similar effort to compel PDI to arbitrate an investment loss claim before FINRA. *See ProShares Trust et al. v. Schnall*, 695 F. Supp.2d 76 (S.D.N.Y. 2010) (Stein, J.) (holding that investors in ETFs were not customers of PDI and could not compel it to arbitrate before FINRA).  Other courts have reached the same conclusion.  *See AXA Distributors v. Bullard*, 2008 U.S. Dist. Lexis 103837 (M.D. Ala. 2008) (variable annuity distributor cannot be compelled to arbitrate investor losses before FINRA); *Oppenheimer Funds Dist. v. Colard*, Case No. 09CV5653 (Denver Co. Dist. Co. 2009) (mutual fund distributor cannot be compelled to arbitrate investor losses before FINRA).  No decision of which we are aware has reached a contrary conclusion.


## STATEMENT OF FACTS

In their FINRA arbitration claims, the Defendants alleged that they retained WTM Investments, an independent investment adviser in Lake Ronkonkomo, N.Y., to manage their investments; that they gave WTM Investments discretionary authority to buy or sell securities on their behalf; that WTM Investments instructed them to open accounts at ProFunds; that WTM Investments bought and sold ProFunds mutual funds for those accounts; and that they sustained investment losses as a result of WTM Investments' misrepresentations and mismanagement of their investments.  WTM Investments is not a

broker-dealer or a member of FINRA. *See* Statement of Claim, *Andrew Keith Slayton and Michael J. Farrell, III v. ProFunds Distributors, Inc.*, (FINRA Case 11-02743) (Exhibit A).

PDI, a broker-dealer, and ProFunds, a statutory trust, are separate and distinct entities. *See* Affidavit of Donald R. Roberson ("Roberson Aff.") ¶ 2 (Exhibit B). The FINRA arbitration names PDI as the respondent. However, the factual allegations in the FINRA arbitration relate to ProFunds. *Id.*

ProFunds is an open-management investment company registered with the Securities and Exchange Commission under the Investment Company Act of 1940 and is organized as a Delaware statutory trust. *Id.* ¶ 3. ProFunds is comprised of multiple separate series, each series being a separate publicly offered mutual fund. *Id.* Through its transfer agent, ProFunds opens shareholder accounts, including the Defendants', to facilitate the purchase and sale of mutual fund shares. ProFunds is neither a broker-dealer registered with the Securities and Exchange Commission nor a member of FINRA, and, therefore, is not required to arbitrate before FINRA. *Id.*

Thus, the Defendants opened accounts at ProFunds, the investment company (not PDI)). *Id.* ¶ 5. WTM Investments, using the discretionary authority granted to it by the Defendants, bought and sold ProFunds mutual fund shares in those accounts. *Id.* The Defendants named PDI, with which they had no relationship, as the respondent in the FINRA arbitration in what appears to be an effort to confect an arbitrable claim where none exists.

Although PDI is a registered broker-dealer and FINRA member, its business is very different from many broker-dealers whose activities typically include offering a

3

broad range of financial and brokerage services to a broad range of customers. PDI's business is limited to serving as the distributor of the shares of ProFunds mutual funds.[1] *Id.* ¶ 4. It does not offer brokerage services to the investing public. *Id.* It has no public investors as customers. *Id.* It does not maintain brokerage accounts; buy or sell securities for the investing public; accept or disburse money on behalf of public investors; or provide investment advice to the investing public. *Id.* There is no agreement to arbitrate -- indeed, there is no contract of any kind -- between the Defendants and PDI. *Id.*

Notably, the Defendants do not and cannot allege that they ever met or spoke with anyone at PDI; ever received investment advice from PDI; sent to or received funds from PDI; or were customers of PDI.[2]

Nevertheless, in or about July 2011, the Defendants commenced an arbitration before FINRA against PDI. Claims were made under the federal securities laws and for common law breach of fiduciary duty and duty to supervise. No answer has been filed. The deadline for PDI's Answer and other filings has been extended to November 7, 2011. The Defendants have declined to stay the arbitration pending a judicial determination of

---

[1]     PDI also serves as distributor of the shares of Access One Trust's mutual funds. Access One is not a party to the FINRA arbitration or this action.

[2]     In the FINRA arbitration, the Defendants describes Gregory J. Thayer as Defendant Andrew K. Slayton's primary point of contact at WTM Investments. *Id.* However, in an apparent attempt to manufacture a connection between the Defendants and PDI, the Defendants also refer to Mr. Thayer as an agent and representative of PDI. In fact, Mr. Thayer is not now and never has been an agent or representative of PDI. Ex. B. ¶ 6. Further, Mr. Thayer is not now and never has been an officer, director or employee of either PDI or ProFunds. *Id.*

whether the dispute is arbitrable before FINRA.  Thus, PDI has no choice but to bring

this motion for a preliminary injunction.

## ARGUMENT

### THE ARBITRATION SHOULD BE PRELIMINARILY ENJOINED

The standard for a preliminary injunction pursuant to Rule 65 of the Federal Rules

of Civil Procedure are identical.  In an action seeking to enjoin an arbitration, the

traditional criteria for granting injunctive relief apply:  A movant must establish that (1)

absent injunctive relief it will suffer irreparable harm and (2) either (a) a likelihood of

success on the merits, or (b) serious questions about the merits such that the balance of

hardship weighs in its favor.  *UBS Financial Serv. v. West Virginia Hospitals-East Inc.*,

2011 Lexis 19420 at *14 (2d Cir. September 22, 2011); *Citigroup Global Mkts., Inc. v.

VCG Special Opportunities Master Fund, Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010).  We

address each of these elements.

#### A. The Plaintiffs Will Suffer Irreparable Harm If Forced to Arbitrate A Dispute It Has Not Agreed to Arbitrate, And Defendants Can Show No Countervailing Hardship.

Courts have clearly held that a party is caused irreparable harm if it is forced to

arbitrate a dispute where it had no contractual obligation to do so.  *See Merrill Lynch Inv.

Managers v. Optibase, Ltd.,* 337 F.3d 125, 129 (2d Cir. 2003), *citing, Maryland Cas. Co.

v. Realty Advisory Bd. On Labor Relations*, 107 F.3d 979, 985 (2d Cir. 1997) (unless

arbitration is enjoined, movant would suffer irreparable harm by being forced to expend

time and resources arbitrating an issue that is not arbitrable and as to which any award

would not be enforceable); *ProShares Trust et al. v. Schnall*, 695 F. Supp.2d 76, 80

(S.D.N.Y. 2010) (PDI and others would suffer irreparable harm if forced to arbitrate without an agreement to arbitrate).

## B. The Plaintiffs Have a Strong Likelihood of Success on the Merits

### 1. Arbitration is Solely a Matter of Contract and Parties May Not Be Forced to Arbitrate Disputes They Did Not Agree to Arbitrate

The Federal Arbitration Act ("FAA"), 9 U.S.C., §§ 1 *et seq.* governs arbitrations involving interstate commerce. Although the public policy embodied in the FAA favors arbitration, "arbitration is a matter of contract, and a party cannot be required to submit to arbitration any dispute which he has not agreed to so submit." *AT&T Tech. Inc. v. Communications Works of America*, 475 U.S. 643, 648 (1986). "[T]he first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985). "Arbitration under the [FAA] is a matter of consent, not coercion, and parties are generally free to structure their arbitration agreements as they see fit … [and] they may limit by contract the issues which they will arbitrate." *Volt Info. Sciences, Inc. v. Stanford Univ.*, 489 U.S. 468, 469 (1989). *See also First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938 (1955) ("Arbitration is simply a matter of contract between the parties; it is a way to resolve disputes – but only those disputes – the parties have agreed to submit to arbitration.").

### 2. Whether An Agreement to Arbitrate Exists Is For the Court to Decide

"The question of whether the parties have submitted a particular dispute to arbitration, *i.e.*, the question of arbitrability, is an issue for judicial determination unless the parties clearly and unmistakably provide otherwise." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (quotations and citations omitted). Addressing

6

facts similar to those presented here, the U.S. Court of Appeals for the Second Circuit

noted that "[t]he case law is clear ... that unless the parties clearly and unmistakably

provide otherwise, the question of whether the parties agreed to arbitrate is to be decided

by the Court, not the arbitrator." *Bensadoun v. Jobe Riat*, 316 F.3d 171, 175 (2d Cir.

2003) (quotations and citations omitted).  A contrary result might force an unwilling

party to arbitrate a matter it reasonably would have thought a judge, not an arbitrator,

would decide.

### 3. No Agreement Exists Between the Parties to Arbitrate Their Dispute

PDI does not have an express agreement with the Defendant to arbitrate disputes.

Ex B. ¶ 4.  On the contrary, there is no contract of any kind between PDI and Defendants.

*Id.*

### 4. The Defendants' Claims Are Not Arbitrable Under FINRA Rules

FINRA requires members including PDI to arbitrate disputes before FINRA in

specific and limited circumstances.  The applicable provision is Rule 12200 of the

FINRA Code of Arbitration (Exhibit C), which governs whether a dispute is required to

be arbitrated.  Members must arbitrate a dispute before FINRA if:

(1) Required by a written agreement, or

(2) Requested by the customer; [and]

> The dispute is between a customer and a member of associated person of a member; and

> The dispute arises in connection with the business activities of the member of the associated person, except disputes involving the insurance business activities of a member that is also an insurance company.

This Rule, thus, contains two prerequisites before a FINRA member can be

compelled to arbitrate.  First, a complainant must be a "customer" of either the FINRA

member or an "associated person" of that member.  Second, the "dispute, claim or controversy must arise in connection with the member's business and the activities of the associated person with the complainant." *John Hancock Life Ins. Co. v. Wilson*, 254 F.3d 48, 53 (2d Cir. 2001).  The Defendants cannot satisfy either prong.

### a.  The Defendants Are Not The Plaintiff's Customers

The first requirement for arbitration is that the dispute arose between a member and a "customer" of the member with respect to that transaction.  "An investor is a 'customer' of a brokerage house and is able to compel the brokerage house to arbitrate only for conduct that falls within the scope of the specific account between the investor and the brokerage house." *Sands Bros. & Co., Ltd. v. Ettinger*, 2004 U.S. Dist. Lexis 4243 (S.D.N.Y. 2004) at *4, *quoting, Bensadoun,* 316 F.3d at 178.  In *Bensadoun*, the Second Circuit also took note of the Eighth Circuit's definition of this use of the term "customer" as referring to "one involved in a business relationship with a[] [FINRA] member that is related directly to investment or brokerage services.  *Id.* at 177 (*quoting Fleet Boston Robertson Stephens, Inc v. Innovex*, Inc. 264 F.3d 770, 772 (8th Cir. 2001).[3]

The Defendants were never customers of PDI.  PDI has no public customers.  Nor does it provide investment advice to the investing public; receive or disburse funds from or to the investing public; or buy or sell securities on behalf of the investing public, including the Defendants.  At most, the FINRA arbitration alleges that that they opened accounts at the direction of WTM Investments at ProFunds, the investment company, and thereafter WTM Investments bought and sold ProFunds mutual funds in those accounts

---

[3]      In *SIPC v. Morgan Kennedy*, 533 F.2d 1314, 1318 (2d Cir. 1976), the Court adopted the dictionary definition of a "customer" as "one who regularly or repeatedly makes purchases, or has business dealings with a … business house."  This definition emphasizes a pattern of purchases and sales by the customer from the broker-dealer.

using the discretionary authority provided to WTM Investments by the Defendants.

The Defendants, moreover, do not allege that they ever communicated directly with PDI regarding their investment or received any advice from PDI regarding their investments. They do not allege that PDI misled them about their investment. Rather, they gave discretionary trading authority to WTM; they directed ProFunds to accept orders from WTM. Having done so, they cannot now claim that they were customers of PDI. *See Malak v. Bear Stearns & Co., Inc.*, 2004 U.S. Dist. Lexis at * 15 (SDNY 2004), *aff'd*, 2004 Lexis 22551 (2d Cir. 2004) (investors that "imparted complete control over the account to" third party and offered " no evidence ... to show that he ever communicated" directly with respondents is not a "customer" of any respondent for purposes of FINRA rules); *see also Bensadoun v. Jobe-Riat*, 316 F.3d at 176  (where investors relinquish investment authority to a third party who deals with a FINRA broker dealer, the investor is not a customer of the broker-dealer and cannot compel the broker-dealer to arbitrate before FINRA).

In *UBS v. West Virginia University Hospitals*, 2011 Lexis 19420 at * 19, the Court of Appeals for this Circuit defined a customer as someone who "purchases, or undertakes to purchase, a good or service from a FINRA member." The Defendants did not purchase any goods or service from PDI. Indeed, they had no contractual relationship with PDI. Rather, they allege that they opened accounts at ProFunds (not PDI) and that WTM Investments bought and sold ProFunds mutual fund shares in those accounts using its discretionary authority.[4]

---

[4]     In *UBS v. West Virginia University Hospitals*, UBS underwrote auction rate securities issued by West Virginia Hospitals. UBS also served as the main broker-dealer responsible for the Dutch auctions in which the auction rate securities were resold and

In *Malak v. Bear Stearns*, Malak invested in a British Virgin Island investment fund. The fund maintained its brokerage account at Bear Stearns. The fund manager lost Malak's investment and fabricated account statements to conceal the losses. When the fraud was discovered, Malak initiated an NASD arbitration against Bear Stearns. The Court found "no doubt that Malak [was] neither a 'customer' of a 'member' firm nor of an 'associated person of a member.'" *Id.* at *5. He never communicated with Bear Stearns directly and never transferred money there. *Id.* at *6. Similarly, in *Herbert J. Sims Co., Inc. v. Roven*, 548 F.Supp.3d 759, 765 (N.D. Cal 2008), another application to stay an arbitration, the court found a customer relationship lacking because, the "[i]nvestors themselves did not [have] any communications, written or oral, with Plaintiff [or the] Plaintiff's employee." The same reasoning mandates an injunction here, since the Defendants had no communications with PDI.

FINRA and the Securities and Exchange Commission, likewise, envision a customer relationship between the "customer" and broker-dealer or a person associated with the broker dealer. [5] For example, FINRA Conduct Rule 2261(c) defined the term

---

their interest rates set. As the underwriter, UBS agreed with West Virginia Hospitals to purchase the auction rate securities outright from West Virginia Hospitals and resell a substantial portion of them to UBS customers. UBS and West Virginia Hospitals entered a broker dealer agreement pursuant to which West Virginia Hospitals agreed to pay UBS a fee for facilitating the auctions at which the auction rate securities were resold. *Id.* at *18-19. Here, however, there is no agreement between PDI and the Defendants.

[5]     The only guidance the FINRA Code of Arbitration Procedures gives as to the definition of a "customer" is to specify that "[t]he term 'customer' shall not include a broker or dealer." Rule 10120-(8). This is a limited exclusion; it is not definition. A reading of this to include anyone who is not a broker or a dealer as a customer has been rejected as overly broad. *See e.g. Fleet Boston Robertson Stephens, Inc. v Innovex, Inc.*, 264 F.3d 770, 772 (8th Cir. 2001) (argument that "by negative inference, this definition means a 'customer' is everyone who is not a broker or dealer is too broad); *Fin. Network*

"customer" as "any person who, in the regular course of such member's business, has cash or securities in the possession of such member."   Elsewhere, FINRA defines the "customer" of a broker-dealer as any person for whom securities are purchased or sold or to whom securities are purchased or sold whether on a regular way, when issued, delayed or future delivery basis." FINRA Rule 2520(a)(3).  This follows the SEC's definition of a "customer," *see*, 17 C.F.R. 240.15c3-1(c)(6) (defining customer as "any person from whom, or on whose behalf, a broker-dealer has received, acquired or holds funds or securities for the account of such person…); 17 C.F.R. 240.17a5(c)(4) (defining customer to include "any person for whom the broker or dealer holds securities for safekeeping or as collateral or whom the broker or dealer carries a free credit balance…").  Each of these definitions envisions a customer relationship between the customer and the broker-dealer.

The Eighth Circuit relied on NASD Rule 2270 (b) [now FINRA Rule 2261(c)] in refusing to compel arbitration.  In *Fleet Boston Robertson Stephens, Inc. v. Innovex*, 264 F.3d 770 (8th Cir. 2001), a broker-dealer provided financial advice to an ailing company seeking a merger partner.  The broker-dealer later sued for fees.  The company moved to compel arbitration arguing that it was a "customer" of the broker-dealer.  Because NASD Rule 2270 defined a "customer" as one who has cash or securities in possession with the member, the court held that the term did not apply in the absence of investment or brokerage-related services. *Id.* at 773.  The same reasoning and result should apply here.

*Inv. v. Theilbar*, 2004 U.S. Dist. Lexis 14889 (N.D. Ill. 2003) ("Code of Arbitration does not define the term 'customer'"); *Brookstreet Sec. Corp. v. Bristol Air, Inc.*, 2002 U.S. Dist. Lexis 16784 (C.D. Cal. 2002) at *22 (exclusion of broker-dealers does not constitute definition of customer); *Investors Capital Corp. v. Brown*, 145 F.Supp.2d 1302, 1306 (M.D. Fl. 2001) (same); *BMA Fin. Servs. v. Guin*, 164 F. Supp.2d 813, 819 (W.D. La. 2001) ("[s]uch a boundless definition would surely upset the reasonable expectations of NASD members.").

*See also Brookstreet Sec. Corp. v. Bristol Air, Inc.*, 2002 U.S. Dist. Lexis 16784 at *22 (N.D. Ca. 2002).

### b. The Claims Did Not Arise "In Connection With" Defendant's Business with PDI

The second requirement for arbitration is that the conduct at issue must arise in connection with the broker-dealer's business with the customer. A customer can compel arbitration with a broker-dealer only for conduct that falls within the scope of the specific account between the investor and the brokerage house. *See Sands Bros. v. Ettinger*, 2004 U.S. Dist. Lexis 4245 at *9-10; *accord, Bensadoun,* 316 F.3d at 178. Even if a brokerage relationship exists, an investor cannot demand arbitration on an issue that falls outside the scope of that relationship. *See Sands Bros*, 2004 Lexis 4245 at *3.

The Defendants cannot satisfy this requirement. The Defendants allege that their investment losses resulted from WMT Investments' misrepresentations about its investment strategy and mismanagement of their investments. PDI distributes mutual funds. The Defendants' investment losses did not arise "in connection with" any business between PDI and Defendants.

### c. Every Court to Consider the Issue Has Held that an Investor Cannot Compel A Mutual Fund Distributor to Arbitrate

Every court to consider this issue has held that an investor cannot compel a mutual fund distributor to arbitrate an investment claim before FINRA. In *ProShares Trust et al. v. Schnall*, 695 F. Supp.2d 76 (S.D.N.Y. 2010), the Schnalls bought and sold exchange traded funds ("ETFs") through a broker-dealer, LPL Financial. When they lost money as a result of these purchases and sales, they initiated an arbitration before FINRA against PDI, among others. U.S. District Judge Stein held that the Schnalls were not

customers of PDI because they had bought shares through LPL Financial (not PDI); they communicated with LPL Financial (not PDI) about their investments; and they were not misled about the placement of their funds. 695 F. Supp.2d at 79-80, *citing Malak v. Bear Stearns*, 2004 Lexis 1422 (SDNY 2004) at *5. Judge Stein enjoined the arbitration. The same reasoning and result should apply here.

In *AXA Distributors v. Bullard*, 2008 U.S. Dist. Lexis 103837 (M.D. Ala. 2008), Bullard bought variable annuities from Raymond James, a broker-dealer, and two of its registered representatives. Bullard initiated a FINRA arbitration against the distributor of the annuities, AXA Distributors, as well as Raymond James. AXA Distributors sought to enjoin the arbitration because the Bullards were not its customers and because their claims did not arise in connection with its business activities. Bullard argued that the brokers who sold him the investment product were somehow associated with AXA Distributors. The Court held that the brokers were not associated with AXA Distributors and that Bullard's claims against AXA Distributors were not subject to arbitration.

Similarly, in *Oppenheimer Funds Dist. v. Colard*, Case No. 09CV5653 (Denver Co. Dist. Co. 2009) (Exhibit D), the Colards maintained a brokerage account at a broker-dealer through which they bought shares in a mutual fund. When the mutual fund's share fell in value, the Colards initiated a FINRA arbitration against the fund's distributor. The court held that the Colards were not customers of the distributor because they did not invest directly with the distributor; did not maintain accounts with the distributor; and did not receive investment advice from the distributor. Because they were not customers of the distributor, the Colards could not compel the distributor to arbitrate. The same reasoning and result should apply here.

13

5.   **Requiring Plaintiffs to Arbitrate Would Violate
      the Plaintiff's "ReasonableExpectations"**

The duty to arbitrate should not be construed so broadly as "to upset the reasonable expectations of FINRA members." *Citigroup Global Markets, Inc. v. VCG Special Opportunities Master Fund Ltd, 2008 U.S. Dist. Lexis 92043(S.D.N.Y. 2008) at *4, quoting Wheat, First Sec., Inc. v. Greene*, 993 F.2d 814, 820 (11th Cir. 1993). Claims like this have *always* have been brought in federal court. No court, as far as we can find, has *ever* required arbitration of this kind of claim.  Requiring arbitration here would do significant injustice to the "reasonable expectations" of the Plaintiff as well as other broker-dealers. *Id.* Indeed, it would alter radically the legal landscape. If PDI can be forced to arbitrate this case, mutual funds will be forced to arbitrate before FINRA any case in which investors have lost money, so long as they involve – no matter how tangentially -- an entity that is a broker-dealer or is affiliated with a broker-dealer such as a mutual fund, hedge fund, exchange traded fund or private equity fund. This is the kind of overreaching that the Court of Appeals warned against in *Bensadoun v. Jobe Riat.*

C.   **The Balance of Hardship Weighs in the Plaintiffs' Favor**

With respect to this last prong, the balance of hardship weighs heavily in the Plaintiff's favor.  If the Plaintiff is compelled to arbitrate, it will give up its rights under the U.S. Constitution and federal statutes to be heard before a judge, to obtain full and fair discovery, and to a trial by jury.  A party's waiver of the constitutional right to a jury must be knowing and voluntary. *Aetna Ins. Co. v. Kennedy*, 301 U.S. 389, 393 (1936). The question of whether Defendants' dispute is arbitrable should be reviewed and resolved before depriving Plaintiffs of their constitutional rights.  In contrast, the

Defendants will sustain no economic harm or hardship if the FINRA arbitration is enjoined pending judicial decision of its arbitrability.

## CONCLUSION

For the foregoing reasons, the Plaintiffs' motion for a preliminary injunction enjoining the FINRA arbitration should be granted.

Dated: New York, New York
      October 17, 2011

Respectfully,

David U. Gourevitch
Law Office of David U. Gourevitch, P.C.
950 Third Avenue, 15th Floor
New York, NY 10017

15